**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| DARIN WILLIAMS | CIVIL ACTION |
| VERSUS | |
| | 16-450-SDD-RLB |
| UNITED PARCEL SERVICE, INC., ET AL. | |

**RULING**

This matter is before the Court on the *Motion for Summary Judgment*[1] by Defendant, United Parcel Service, Inc. ("UPS"). Plaintiff, Darin Williams ("Plaintiff") filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] Plaintiff responded to the Defendant's *Reply* with a *Surreply*.[4] For the reasons which follow, the Court finds that the Defendant's *Motion* should be GRANTED.

**I.    FACTUAL BACKGROUND**

Plaintiff filed this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging claims of disparate treatment.[5] Specifically, Plaintiff alleges that UPS discriminated against him when it fired him based on his sex, male.[6]

Plaintiff was hired by UPS in 1998 and remained employed there until 2016.[7] During his time at UPS, Plaintiff held several positions including sorter, pre-loader,

---

[1] Rec. Doc. 32.
[2] Rec. Doc. 33.
[3] Rec. Doc. 36.
[4] Rec. Doc. 39.
[5] Rec. Doc. 1, p. 4.
[6] *Id.*
[7] Rec. Doc. 32-1, p. 5; Rec. Doc. 32-2, p. 23.
45709

package driver, and on road supervisor.[8] In 2011, Plaintiff was promoted to business manager of the Port Allen facility.[9] As business manager, Plaintiff managed over 200 union employees, five full-time supervisors, and 12 part-time supervisors.[10] Plaintiff was terminated by UPS following an investigation into an unreported injury sustained by one of Plaintiff's subordinates. The events giving rise to the investigation and Plaintiff's subsequent termination form the basis of this lawsuit.

In September of 2015, UPS began an investigation into an injury sustained by Mia Baptiste ("Baptiste"), part-time package center supervisor and office management specialist, that was not reported according to UPS's injured employee procedure[11] ("IEP").[12] According to Baptiste, on May 15, 2015, she and on-road supervisor Chris Wooten ("Wooten"), who is Baptiste's supervisor, were playing with a can of compressed air.[13] Wooten sprayed the canister towards Baptiste's leg at which point foam shot out, landed on her, and burned her leg.[14] Two days later, Baptiste went to the hospital for treatment and was diagnosed with a second degree burn.[15] On the date of the incident, Wooten asked Baptiste several times if she would like to report the incident and she declined.[16] According to the IEP, Wooten should have reported the injury to his supervisor-Plaintiff. Thereafter, the IEP requires full-time operations management, like

---

[8] Rec. Doc. 32-1 p. 6; Rec. Doc. 32-2, p. 23.
[9] Rec. Doc. 32-1, p. 7.
[10] Rec. Doc. 1, p. 1.
[11] See Rec. Doc. 32-9, pp. 5-32
[12] Rec. Doc. 32-9, pp. 2-3, 35-36.
[13] Rec. Doc. 32-4, pp. 2-3; Rec. Doc. 33-3, pp. 13-14.
[14] *Id.*
[15] Rec. Doc. 33-3, p. 13.
[16] Rec. Doc. 32-4, pp 3-4.

45709

Plaintiff, to enter the work related injury into the Safety and Health Risk Management Information System ("SHRMIS").[17]

The September investigation was initiated by area human resources manager Wilfred Edwards ("Edwards") after receiving information from one of his human resources supervisors Shraya Williams ("Williams").[18] A report made by Williams to Edwards contained information about the incident that occurred on May 15, 2015, between Baptiste and Wooten.[19] According to the Williams report, after finding out about the incident, Plaintiff spoke to Baptiste, at which time Baptiste told Plaintiff she did not want to report the incident, after which Plaintiff told Williams "if the injured employee does not want to report the accident, the center is not obligated to do so."[20] The report further states that Williams asked Baptiste for a write-up of the incident, but it was her belief that Plaintiff instructed Baptiste not to submit such information.[21] Plaintiff vehemently disputes Williams' account of these events however; it is undisputed that Plaintiff never reported the injury into SHRMIS, as directed by the IEP.

According to Plaintiff, he and Williams found out about the incident at the same time, in or around late June or early July of 2015.[22] On that day, Plaintiff and Williams were together when Plaintiff noticed a band-aid on Baptiste's leg.[23] After hearing about the incident, Plaintiff told Baptiste that he had to fill out a report, but Baptiste did not want to make one.[24] Plaintiff then asked Williams what he should do, and Williams advised

---

[17] Rec. Doc. 32-9, p. 11.
[18] Rec. Doc. 32-9, pp. 2-3, 35-36.
[19] Rec. Doc. 32-9, pp. 35-36.
[20] *Id.*
[21] *Id.*
[22] Rec. Doc. 1, p. 1; Rec. Doc. 33, p. 1.
[23] Rec. Doc. 1, p. 2; Rec. Doc. 33, p. 1-2.
[24] Rec. Doc. 1, p. 2; Rec. Doc. 33, p. 2.

Plaintiff that he could not force Baptiste to report the injury.[25] Plaintiff relied on the information from Williams, because she was a human resources supervisor, and never reported the incident.[26] Plaintiff did not contact the District Health and Safety Manager or District Occupational Health Supervisor to inquire what he should do, although this is the procedure required by the IEP.

At the conclusion of the September investigation, the findings were reviewed by Paul Witt ("Witt"), west package division manager in the mid-south district (Plaintiff's boss).[27] After consulting with human resources director Jeff Bloedorn ("Bloedorn"), Witt made the decision to terminate both Plaintiff and Wooten.[28] Witt came to this decision as to Wooten because he failed to report the injury, for behaving unprofessionally in causing the injury, and for attempting to conceal the injury by paying a portion of Baptiste's medical expenses.[29] Witt's decision to fire Plaintiff was based on his failure to report the injury, for his behavior during the investigation, and for prior violations of company policy.[30]

Thereafter, Plaintiff and Wooten invoked UPS's employee dispute resolution process to challenge their terminations.[31] Each participated in the peer review panel process at which they had the opportunity to present argument, evidence, and testimony

---

[25] Rec. Doc. 1, p. 2; Rec. Doc. 33, p. 2; Rec. Doc. 32-1, pp. 46-53.
[26] Rec. Doc. 32-1, pp. 46-53.
[27] Rec. Doc. 32-5, p. 3.
[28] Rec. Doc. 32-5, pp. 3-4; Rec. Doc. 32-6.
[29] Rec. Doc. 32-5, p. 3. After finding out Baptiste went to the hospital, Wooten offered and did pay for some of her medical expenses. Rec. Doc. 32-4, pp. 6-7.
[30] Rec. Doc. 32-5, p. 4. Plaintiff was involved in 3 investigations for policy violations in 2015. 1) Plaintiff was disciplined after failing to monitor discretionary spending at the Port Allen facility. Rec. Doc. 32-7, pp. 1-2; Rec. Doc. 32-2, pp. 74-78; Rec. Doc. 32-5, pp. 1-2; Rec. Doc. 32-1, p. 27. 2) Plaintiff instructed one of his subordinates to provide driving lessons to a potential job applicant in a UPS vehicle during work hours in violation of UPS policy. Rec. Doc. 32-7, pp. 2, 7; Rec. Doc. 32-1, pp. 88-91. 3) The foregoing failure to report Baptiste's injury.
[31] Rec. Doc. 32-1, pp. 62-63; Rec. Doc. 32-4, pp. 8-12.

in support of their cases.[32] Each panel recommended that Wooten and Plaintiff be reinstated, but without back pay, without a 2015 incentive award, and without a 2016 salary increase.[33]

Witt received the recommendations of the panels and discussed them with Bloedorn.[34] Witt chose to accept the panel's recommendation to reinstate Wooten, but Witt rejected the recommendation to reinstate Plaintiff.[35] Witt felt that Plaintiff's failure to report the injury, particularly in light of his position, coupled with his failure to contact the proper safety personnel and his repeated past policy violations warranted his termination.[36]

Following his termination, Plaintiff filed a complaint with the Equal Employment Opportunity Commission alleging unlawful discrimination. He was issued a Notice of Right to sue on April 6, 2016.[37] Plaintiff filed the instant lawsuit on July 5, 2016.[38]

In its *Motion*, UPS argues that it has presented a legitimate, nondiscriminatory reason for terminating Plaintiff. Moreover, Defendant contends that Plaintiff has no evidence that his termination was based on his sex.

In response, Plaintiff argues that UPS's evolving stated reasons for his termination support a finding of pretext. Specifically, Plaintiff contends that UPS has proffered additional reasons for his termination that were not actually taken into account at the time of his termination.

---

[32] Rec. Doc. 32-2, pp. 52-54.
[33] Rec. Doc. 32-1, p. 74; Rec. Doc. 32-4, p. 13.
[34] Rec. Doc. 32-6, p. 2; Rec. Doc. 32-5, p. 4.
[35] Rec, Doc, 32-5p. 4.
[36] *Id.*
[37] Rec. Doc. 32-2, pp. 85-86.
[38] Rec. Doc. 1.
45709

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[39] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[40] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[41] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[42] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[43]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[44] All reasonable factual inferences are drawn in favor of the nonmoving party.[45] However, "[t]he Court has no

---

[39] Fed. R. Civ. P. 56(a).
[40] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[41] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, (1986)).
[42] *Rivera v. Houston Indep. School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[43] *Willis v. Roche Biomedical Labs, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[44] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)).
[45] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
45709

duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[46] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[47]

As is the case here, "[w]here the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case. The nonmovant must then come forward with specific facts showing that there is a genuine [dispute] for trial."[48]

### B. Title VII Sex Discrimination

Title VII provides in relevant part that "[i]t shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[49] In order to survive summary judgment in an employment discrimination case, in the absence of direct evidence of discrimination, the plaintiff must demonstrate, pursuant to the burden-shifting framework found in *McDonnell Douglas Corp. v. Green*, that: (1) he was in a protected class; (2) he was qualified for the position; (3) he suffered adverse

---

[46] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[47] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).
[48] *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310-11 (5th Cir. 2017)(citation and quotation marks omitted).
[49] 42 U.S.C. § 2000e-2(a)(1).
45709

employment action; and (4) he was treated less favorably than similarly situated employees.[50] The Supreme Court noted that courts should apply this framework flexibly, as "the facts necessarily will vary in Title VII cases."[51] Moreover, "to establish a prima facie case, a plaintiff need only make a very minimal showing."[52]

If the plaintiff can establish these elements, the burden will shift to the defendant to show a legitimate, non-discriminatory purpose for the adverse employment action.[53] The defendant must point to admissible evidence in the record, but the burden is one of production, not persuasion.[54] The defendant is not required to show that the employment decision was proper, only that it was not discriminatory.[55] The employer may succeed at this stage by proving that it would have taken the same action even had it not considered the unlawful factor.[56]

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[57] "However, a plaintiff cannot prove

---

[50] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (applying the *McDonnell Douglas* framework to Title VII claims).
[51] *Id.* at 802 n.13; *see also Intern. Broth. of Teamsters*, 431 U.S. at 358 (recognizing that the importance of *McDonnell Douglas* lies "not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discrimination criterion illegal under the [Civil Rights] Act"); *Barnes*, 778 F.2d at 1099 ("The *McDonnell Douglas* rule was intended to be a flexible one.").
[52] *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).
[53] *Id.*
[54] *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000).
[55] *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007); *see also Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002); *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.").
[56] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).
[57] *Id.*
45709

that an employer's proffered reason is pretextual merely by disputing the correctness of the employer's decision."[58] "[I]n conducting a pretext analysis, we do not engage in second-guessing of an employer's business decisions. Title VII does not require employers to make correct decisions, only nondiscriminatory decisions."[59]

### C. Plaintiff's *Prima Facie* Case

Neither Plaintiff nor UPS discuss the elements of Plaintiff's burden of establishing a *prima facie* case of discrimination at length in their Memoranda to the Court. While UPS does not concede that Plaintiff has established a *prima facie* case,[60] it is well established that Plaintiff bears this burden at trial.[61] If Plaintiff fails to establish a *prima facie* case, then no inference of discrimination arises, and the burden shifting analysis of *McDonnell Douglas* ends. Without deciding whether Plaintiff has established the first three elements of his *prima facie* case, the Court analyzes whether Plaintiff's comparators are similarly situated in accordance with Fifth Circuit precedent.

Plaintiff's claim of sex discrimination is predicated upon allegations that he was fired for failing to report an injury according to UPS' IEP procedure, but similarly situated female managers, Williams and Baptiste, were given more favorable treatment; *i.e.* they were not disciplined at all. Plaintiff has not provided any summary judgment evidence to show that Williams and Baptiste were similarly situated.

The Fifth Circuit has considered whether one employee is similar to another on many occasions and has given guidance on certain factors to consider in making such a

---

[58] *Burton v. Texas Dep't of Criminal Justice*, 584 Fed.Appx. 256, 257 (5th Cir. 2014) (citation omitted).
[59] *Id.* at 258.
[60] Rec. Doc. 32-10, p. 10.
[61] See *Lyles*, 871 F.3d 305, 310-11 (5th Cir. 2017).
45709

finding. In *Lee v. Kansas City Southern Ry. Co.*,[62] the Fifth Circuit provided the following guidance on similarly situated comparators:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of an employment discrimination analysis.[63]

Here, the record evidence reflects that Plaintiff, Baptiste, and Williams are not similarly situated. At the outset, as a human resources supervisor, Williams does not have the same supervisor as Plaintiff and works for a different division of UPS altogether. Moreover, Witt, the person who made the decision to terminate Plaintiff, did not have the authority to administer discipline to Williams because she is a human resources employee.[64] As for Baptiste, Plaintiff is the supervisor of her supervisor (Wooten). Accordingly, they all have different supervisors and do not have similar work responsibilities. Finally, the record reflects that both Baptiste and Williams ultimately

---

[62] 574 F.3d 253 (5th Cir. 2009).
[63] *Id.* at 259-60 (internal citations omitted).
[64] Rec. Doc. 32-5, p. 4.
45709

reported the accident to a supervisor; Baptiste to Wooten and Williams to Edwards, whereas Plaintiff maintains that he relied on the advice of Williams and never reported the injury. In light of the foregoing, the Court finds that Plaintiff has failed to establish the fourth element of a *prima facie* case, *i.e.*, to show that he was treated less favorably than similarly situated members outside of his protected class. Therefore, Plaintiff has failed to present evidence of a disputed material fact that would defeat summary judgment.

### D. Employer's Non-Discriminatory Reason Merely Pretext

Even if Plaintiff could establish a *prima facie* case, and even under the best rendering of the evidence in his favor, he cannot prevail under Title VII on the basis of sex discrimination. When a plaintiff succeeds in establishing a *prima facie* case, the burden will shift to the defendant to show a legitimate, non-discriminatory purpose for the adverse employment action.[65]

UPS has presented sufficient summary judgment evidence of several non-discriminatory reasons for terminating Plaintiff. Notably, Plaintiff was involved in three investigations in 2015, including the failure to report the Baptiste injury, for failure to adhere to UPS policies. The first incident involved Plaintiff's failure to monitor his subordinates' discretionary spending at the Port Allen facility, and the second involved Plaintiff's instruction to train a prospective employee during business hours and in a UPS vehicle.[66] Plaintiff does not dispute that these investigations or policy violations occurred; rather, he argues that they are irrelevant to his termination.[67]

Once the defendant satisfies its burden of production, the burden shifts back to the

---

[65] *Nichols*, 81 F.3d 38, 41 (5th Cir. 1996).
[66] See Rec. Docs. 32-7, 32-8.
[67] Rec. Doc. 33, p. 8.
45709

plaintiff to show that any non-discriminatory purposes offered by the defendant are merely a pretext for discrimination by presenting evidence of disparate treatment or demonstrating that the proffered explanation is false.[68] Plaintiff's only argument concerning discrimination is that he and Wooten as males were disciplined for failing to report Baptiste's injury while Baptiste and Williams as females were not disciplined. Additionally, Plaintiff argues that the proffered explanation by UPS is false because its reasons have evolved at the litigation stage.

Plaintiff's arguments for pretext are lacking in both substance and sufficient evidentiary support. First, accepting as true that two male employees were disciplined while two female employees were not, this evidence alone is not sufficient to prove pretext for intentional discrimination.[69] Plaintiff makes no attempt to explain why UPS would be motivated to favor female employees over male employees. Additionally, Plaintiff fails to present any evidence or make any argument regarding a past history of differential treatment. Further, Witt ultimately decided to reinstate Wooten, a male, because he found Wooten's conduct to be less egregious than Plaintiff's, he had no prior discipline, and Wooten readily admitted to exercising poor judgment in harming Baptiste and failing to report the injury.[70] This fact alone undermines Plaintiff's argument that UPS discriminated against him based on his sex.

Finally, Plaintiff's argument that UPS' reason for termination is false relies heavily on his own testimony that Williams' account of the events of the Baptists injury are false.

---

[68] *Price Waterhouse,* 490 U.S. 228 (1989).
[69] See *King v. W.W. Grainger Inc.*, 502 F. App'x. 360 (5th Cir. 2012).
[70] Rec. Doc. 32-5, p. 4.
45709

Plaintiff specifically argues that Williams lied to Witt, Greenwell,[71] Edwards, and Breedlove[72] (all parties involved in the investigation of Baptiste's unreported injury) in that she did not tell Plaintiff he was not required to report the injury to Baptiste.[73] In addition, Plaintiff argues that UPS' reasons for terminating him evolved from the time of his termination to litigation because he was originally told by Witt and Edwards that he was being terminated for failure to file an IEP procedure and fear of retaliation and intimidation.[74]

Plaintiff submits no evidence other than his own subjective beliefs to support these arguments. There is nothing in the record to show that Witt did not take Plaintiff's prior policy violations concerning the discretionary spending and prospective employee training into account when determining whether to terminate Plaintiff. Similarly, Plaintiff's disagreement with UPS accepting Williams' version of the events surrounding Baptiste's injury is not appropriate summary judgment evidence to demonstrate a genuine dispute as to a material fact.[75] Regardless of which version of the events is actually the truth, the record reflects that an investigation was conducted, both Williams' and Plaintiff's versions of the events were known to UPS, and Witt made the decision to terminate Plaintiff and, Wooten. It is not within the Court's province to decide which version of the facts are correct and it does not engage in second-guessing of an employer's business decisions.

---

[71] Kimberly Greenwell, security manager, was involved in all three investigations involving policy violations of Plaintiff. Rec. Doc. 32-7.

[72] Tim Breedlove, UPS security director, is Kimberly Greenwell's supervisor and oversees security investigations conducted by Greenwell and those security advisors who report to Greenwell. Rec. Doc. 32-8.

[73] Rec. Doc. 33, p. 3.

[74] *Id.* at p.6.

[75] Notably, Plaintiff argues that a memorandum attached to Edwards' declaration purportedly from Williams is inadmissible hearsay. Whether the memorandum is appropriate evidence on summary judgment is irrelevant to the Court's analysis.

45709

Plaintiff has failed to point to appropriate summary judgment evidence showing that UPS' decision to terminate his employment was merely a pretext for discrimination.[76]

### III.  CONCLUSION

For the reasons set forth above, Defendant's *Motion for Summary Judgment*[77] is GRANTED. Plaintiff's claims against Defendant, United Parcel Service, Inc., are DISMISSED with prejudice.

*Judgment* shall be entered accordingly.

Therefore, the final pretrial conference set for May 15, 2018, at 2:30 p.m. is hereby canceled.

The jury trial set for June 4, 2018 is also hereby cancelled.

All pending motions are denied as moot.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on May 11, 2018.

      *Shelly D. Dick*
**JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[76] The Court notes that Plaintiff's *Petition* alleged a claim of vicarious liability against UPS for defamatory statements made by Shraya Williams. However, the defamation claim was dismissed for failure to state a claim on 1/17/17. Rec. Doc. 22.
[77] Rec. Doc. 32.
45709